UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 17-CR-120 (CKK) |
| v. | |
| ALLAN MENDOZA,<br>  also known as "Carnes," and "Carnitas,"| |
| Defendant. | |

## GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States respectfully moves to detain the Defendant, Allan Mendoza, also known as "Carnes" and "Carnitas," pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is a high-level member of a Guatemalan drug trafficking organization ("DTO"), the Lorenzana DTO, that transports tonnage quantities of cocaine for sale and distribution to Mexico-based DTOs for ultimate importation into the United States. As discussed below, the Defendant is charged with drug trafficking and firearm offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time for serious offenses that carry mandatory minimum sentences, is known to command others who carry firearms, potentially has access to substantial amounts of drug proceeds, and is subject to an immigration detainer because he has no immigration status in the United States. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

## BACKGROUND

On June 20, 2023, the U.S. District Court for the District of Columbia issued an arrest warrant for the Defendant based on an indictment in this case. That same day, a grand jury sitting

1

in the District of Columbia returned and filed a superseding indictment (the "Indictment")[1] against the Defendant and his co-defendants, charging him with:

- Conspiring to distribute cocaine, intending, knowing, and having reasonable cause to believe that the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B)(ii), and 963 (Count Two); and

- Use of a firearm, including a machine gun, destructive device, semi-automatic assault weapon or pistol, during and in relation to a drug trafficking crime and possession of a firearm in furtherance of a drug trafficking crime, where one or more of such firearms was brandished, one or more of which was a semi-automatic assault weapon, a machine gun, and a destructive device, in violation of 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(B)(i), 924(c)(1)(B)(ii) and 18 U.S.C. § 2 (Count Four).

The Indictment is the product of an extensive, long-term, and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the drug-trafficking activities of the Lorenzana DTO operating in Guatemala. The Government anticipates that the evidence at trial will show that from in or about January 2006 through the date of the Indictment, the Defendant engaged in a drug trafficking conspiracy with the ultimate objective of importing cocaine into the United States for his own profit. If this case proceeds to trial, the Government expects its evidence to consist of testimony from many cooperating witnesses with direct communications and interactions with the Defendant discussing drug trafficking and drug-trafficking related activities.

---

[1] The Indictment was a Superseding Indictment against Haroldo Waldemar Lorenzana-Terraza that added the Defendant as well as three other co-defendants.

This evidence will show that, during the relevant time period, the Defendant was a high-level member of the Lorenzana DTO.

The Lorenzana DTO has been one of most significant DTOs operating in Guatemala since the early 2000s. It is responsible for transporting multi-ton quantities of cocaine from Colombia and other South and Central American countries to Guatemala. The Lorenzana DTO facilitates the transportation of the cocaine to various Mexican DTOs for eventual transportation into the United States and other destinations. The Lorenzana DTO also facilitates the collection, transportation, and delivery of narcotics proceeds from the United States to Guatemala. The organization carries out violent acts—including murder, assault, kidnapping, assassination, and torture—to further its narcotics trafficking operations. In carrying out these acts of violence, its members possess, carry, use, and brandish firearms, including destructive devices, machine guns, and semiautomatic assault weapons.

In or around late 2006 or early 2007, Haroldo Waldemar Lorenzana-Terraza ("Haroldito") succeeded his father as the leader of the Lorenzana DTO and quickly established himself as a major trafficker in Guatemala. In this role, Haroldito significantly expanded the Lorenzana DTO's presence across multiple departments within the country. Through his organization, he traffics multi-ton quantities of cocaine on behalf of various Mexican, Honduran, and Venezuelan DTOs for importation into the United States by Mexican cartels, including the notorious Sinaloa Cartel. Haroldito frequently employs violence, including murder, to further his drug trafficking operations. He is heavily armed and commands over 300 armed security guards equipped with firearms, machine guns, semiautomatic assault weapons, and destructive devices such as grenades, all used to protect the DTO's shipments and to ensure Haroldito and his co-conspirators evade

capture. As Haroldito's power and influence in the drug trafficking community has grown, he has surrounded himself with a loyal circle of associates, including the Defendant.

The Defendant served as one of Haroldito's top lieutenants and was primarily responsible for coordinating the dispatch and receipt of cocaine-laden aircraft, as well as regularly managing land-based drug shipments within Guatemala on Haroldito's behalf. On one occasion, the Defendant oversaw the arrival of a plane on December 6, 2019, at a ranch in Rubelsanto Chisec, Alta Verapaz. After the aircraft was unloaded and had departed, Guatemalan law enforcement arrived at the scene and discovered a corral—originally intended for cattle—filled with 751 packages of cocaine, five AR-15 machine guns, four radio transmitters, and other items. All the materials were seized. The Defendant was present for the plane's arrival and later contacted Haroldito to report the loss.

The Defendant is a Guatemalan national with no known contacts in the United States, other than his co-conspirators. He was paroled into the United States and has no valid visa to remain here. An Immigration and Customs Enforcement detainer is in place if Defendant is released from the custody of the U.S. Marshal's Service.

## LEGAL STANDARDS

Under the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1), (f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' *or* a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019) (emphasis added); *see also* 18 U.S.C. § 3142(c)(1) ("If the judicial officer determines that the release . . . will not reasonably assure the appearance of the

4

person as required *or* will endanger the safety of any other person or the community . . . ." (emphasis added)). The Government bears the burden of establishing the defendant's danger to the community by clear and convincing evidence, but the Government need only prove the Defendant poses a flight risk by a preponderance of the evidence. *United States v. Munchel*, 533 F. Supp. 3d 1, 8 (D.D.C. 2021) (dangerousness); *Vasquez-Benitez*, 919 F.3d at 551 (flight risk).

When the court finds that there is probable cause to believe that the defendant committed (1) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act or Controlled Substances Import and Expert Act or (2) an offense under 18 U.S.C. § 924(c), that finding triggers a rebuttable presumption that no condition or combination of conditions can reasonably assure the defendant's appearance and the safety of others when the court finds. 18 U.S.C. § 3142(e)(3). In making the final determination as to whether the defendant should be detained pending trial, the court must take into account: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## ARGUMENT

The Defendant should be detained while awaiting trial because he both poses a danger to others and the community and a serious flight risk.

### I. There Is a Rebuttable Presumption that the Defendant Is Dangerous and a Flight Risk

The Defendant is charged with multiple offenses that carry a rebuttable presumption that the Defendant is both dangerous and a flight risk: Count Two charges the Defendant with conspiring to distribute cocaine for unlawful importation into the United States, in violation of 21

U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B)(ii), and 963, which carries a mandatory minimum penalty of ten years' imprisonment; and Count Four charges the Defendant with use of a firearm in violation of 21 U.S.C. § 924(c), which carries a mandatory minimum penalty of up to thirty years' imprisonment. Each of these offenses are qualifying offenses under 18 U.S.C. § 3142(e)(3)—Count Two under subsection (3)(a) and Count Four under subsection (3)(b). Thus, the Court's analysis here begins with a presumption that there is no condition or combination of conditions that will reasonably assure the appearance of the Defendant and the safety of the community.

### II. All Four Factors Weigh in Favor of the Defendant's Pre-Trial Detention

The Defendant cannot overcome this rebuttable presumption in favor of pretrial detention in this case because § 3412(g)'s factors all weigh heavily against him.

#### a. The Nature and Circumstances of the Offenses Charged

The nature and circumstances of the offenses heavily weigh in favor of detention. As described above, the Defendant is charged with two serious offenses and faces a lengthy prison term as a result. The Defendant engaged in a multi-year drug trafficking conspiracy to import cocaine into the United States, and he used firearms, including machine guns and destructive devices, during and in furtherance of the conspiracy. Based on the amount of cocaine attributable to him, the Defendant faces a U.S. Sentencing Guidelines base offense level of 38; he is also eligible for enhancements based on his use of a firearm, use of an aircraft, and his leadership role, to name a few. With a criminal history category of I, the Defendant could face a Sentencing Guidelines range of life imprisonment.

The charges against the Defendant, and the penalties he faces as a result, underscore both that he poses a danger to others and that he is a flight risk. *See* 18 U.S.C. § 3142(g)(1) (court should

consider whether the offense is a crime of violence or involves a controlled substance, firearm, explosive, or destructive device); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding that serious nature of offenses and punishments Congress provided for those offenses gave the defendant substantial incentive to flee); *United States v. Anderson*, 384 F.Supp.2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to flee).[2]

      b. <u>The Weight of the Evidence Against the Defendant</u>

The weight of the evidence against the Defendant also weighs heavily in favor of his pretrial detention. The Government's evidence includes testimony from many cooperating witnesses who directly communicated and interacted with the Defendant and Haroldito and will speak to the Defendant's use of weapons and other conduct in furtherance of the Lorenzana DTO's drug trafficking activities. The evidence is comprehensive and substantial, and it underscores the Defendant's risk to others and the community. *See United States v. Vergara*, 612 F. Supp. 2d 36, 37-38 (D.D.C. 2009) (after finding that alleged offense was serious and that the government's evidence is strong, concluding that defendant's release "would pose an unreasonable danger to the community despite any conditions that could be placed on her during her release"). It also provides the Defendant with considerable incentive to flee. *United States v. Chansley*, 525 F. Supp. 3d 151,

---

[2] Indeed, courts have recognized that Congress created a rebuttable presumption in favor of pretrial detention because Congress found "based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *United States v. Alatishe*, 768 F.2d 364 at 370 n.14 (D.C. Cir. 1985) (rebuttable presumption for serious drug trafficking offenses included because "the extremely lucrative nature of drug trafficking, and the fact that drug traffickers often have established substantial ties outside the United States from whence most dangerous drugs are imported into the country," means that "these persons have both the resources and foreign contacts to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences") (quoting S.Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S.Code Cong. & Admin.News 1984, p. 3203).

170 (D.D.C. 2021) ("The overwhelming weight of the evidence may further prompt defendant to flee and thus weighs in favor of pre-trial detention.").

  c. <u>The History and Characteristics of the Person</u>

The Defendant is a Guatemalan national with no known ties to the District of Columbia or the United States. He maintains strong familial and criminal connections in Guatemala and likely has access to substantial drug proceeds in the form of untraceable cash. The Defendant was brought to the United States solely for the purpose of federal prosecution, and a U.S. Immigration and Customs Enforcement detainer is in place should he be released from the custody of the U.S. Marshal's Service. Given that he has no legitimate reason to remain in the country beyond this criminal case, he presents a significant risk of flight if released.

  d. <u>The Nature and Seriousness of the Danger to Others</u>

At trial, the Government will present substantial evidence that the Defendant's cocaine trafficking activities were in service of the Sinaloa Cartel, among other Mexican DTOs. On February 20, 2025, the U.S. Department of State designated the Sinaloa Cartel as a foreign terrorist organization pursuant to Executive Order 13224. Releasing the Defendant—whose year-long criminal activities were intimately tied to a now-recognized terrorist organization—into our community could pose grave danger to the safety of the American public.

## **CONCLUSION**

The relevant inquiry for the Court is whether there are conditions that can be placed upon the Defendant that will reasonably assure the Defendant's appearance at future court proceedings

and the safety of the community. For the Defendant, there are none. The United States respectfully requests that the Court detain the Defendant pending trial.

Respectfully submitted Wednesday, June 18, 2025.

                                        MARLON COBAR, Chief
                                        Narcotic and Dangerous Drug Section
                                        Criminal Division
                                        United States Department of Justice


By:      */s/ Josh Katcher*
            Josh Katcher
            Douglas Meizel
            Ligia Markman
            Trial Attorneys
            Narcotic and Dangerous Drug Section
            Criminal Division
            United States Department of Justice
            145 N Street, Northeast
            Washington, D.C. 20530
            (202) 805-5769
            Joshua.katcher@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was served via ECF to counsel of record, on Wednesday, June 18, 2025.

                                      By:    */s/ Josh Katcher*
                                                    Josh Katcher
                                                    Trial Attorney
                                                    Narcotic and Dangerous Drug Section
                                                    Criminal Division
                                                    United States Department of Justice